UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ELLEN SPOONEMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16 CV 61 CDP |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Ellen Spoonemore brings this action seeking judicial review of the Social Security Commissioner's decision to deny her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 405(g), *et seq*. Judicial review of the Commissioner's final decision under Title II is available under Section 205(g) of the Act. 42 U.S.C. § 405(g). Because the Commissioner's decision is supported by substantial evidence on the record as a whole, I will affirm the decision.

### Procedural Background

Spoonemore filed her application for disability insurance benefits in August 2013, claiming she became disabled on July 1, 2006, because of torn ankle

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Berryhill is automatically substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action.

tendons, locked hip, severe pain in both knees, lower back pain, and diverticulitis. The Social Security Administration denied her application for benefits in September 2013. On August 21, 2014, a hearing was held before an administrative law judge (ALJ) at which Spoonemore and a vocational expert testified. On November 20, 2014, the ALJ denied Spoonemore's claim for benefits, finding that her impairments were not severe on or before December 31, 2011, the date she was last insured. On February 2, 2016, the Appeals Council denied Spoonemore's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Spoonemore argues that the ALJ erred in finding at Step 2 of the sequential analysis that her impairments were not severe. Spoonemore specifically argues that the ALJ's evaluation of her credibility and the medical and opinion evidence of record improperly imposed a higher burden on her at this step of the analysis. Spoonemore also argues that the ALJ failed to fully develop the record by not obtaining the services of a medical expert to infer a reasonable onset date of the degree of limitations documented in the record. For the reasons that follow, the ALJ's decision is supported by substantial evidence.

## Evidence Before the ALJ

*Spoonemore's Testimony*

At the hearing on August 21, 2014, Spoonemore testified in response to questions posed by the ALJ and counsel. At the time of the hearing, Spoonemore

was fifty-eight years old.  She lived in an apartment with her boyfriend who was then drawing disability from the Veteran's Administration.  She completed the eleventh grade in high school and can read, write, and do basic math.  (Tr. 36-38.)

Spoonemore testified that she does not currently work, and has not worked since 2006.  Her most recent job was at Lucky's convenience store, where she worked as a store clerk.  Her previous jobs before Lucky's were also in retail at convenience stores or gas stations.  Spoonemore testified that she stopped working at Lucky's because of severe swelling and pain in her ankles as well as some knee pain and stiffness.  Spoonemore testified that she stood all day while working ten-hour shifts at Lucky's and regularly lifted about twenty to thirty pounds.  Her employer provided her with a stool so that she could sit when there were no customers in line, but Spoonemore testified that the amount of time she could sit totaled one or two hours out of her ten-hour work day.  She never used an assistive device for walking or standing.  (Tr. 36, 40-42, 48-49.)

Spoonemore testified that she sought treatment for ankle pain in 2005 from Ozarks Medical Center and that an MRI showed joint issues and possible arthritis.  She understood at the time that she had torn tendons or ligaments.  She testified that the doctor told her surgery was an option but otherwise did not give her a treatment plan.  She did not have any other appointments with this doctor.  Spoonemore testified that she did not have health insurance at the time, so she went to Shannon County Family Clinic, which was a "sliding scale" clinic that

allowed her to pay cash. She testified that the clinic was unable to prescribe any type of treatment for her, so she treated her ankle pain with ice, elevation, and ibuprofen. (Tr. 43-44, 50-53.)

Spoonemore testified that a few months after she left Lucky's, she tried to find a job where she did not need to stand but was unsuccessful in her search. She testified that she did not apply for disability at the time because her boyfriend, who was then working, said he would take care of her. She testified to substantial weight gain since she left work, reporting her weight in 2006 to be 170 to 180 pounds and her current weight to be 270 pounds. (Tr. 37, 42, 49.)

When asked specifically about her physical abilities in 2011, Spoonemore testified that she experienced some difficulty squatting and kneeling and had some pain going up and down stairs. She had no difficulty sitting or with lifting. She could stand for forty-five minutes to an hour at any one time and had no difficulty walking on smooth surfaces. She never used an assistive device for walking. Spoonemore testified that she performed household chores such as sweeping, mopping, cleaning, laundry, and cooking but that she spread these chores out over several days. She went fishing several times during the summer, but always took a chair so she could sit. (Tr. 36, 53-57.)

*Medical Evidence*

On August 10, 2005, Spoonemore underwent an MRI of the right ankle at Ozarks Medical Center for ankle pain and possible peroneal tendon pathology.

Results showed joint effusion, bone marrow edema of the talus and calcaneus, and subcutaneous soft tissue edema, but there was no evidence of ligamentous or tendon injury. The MRI also suggested subtalar arthritis. No plan for treatment or for follow up is noted. (Tr. 218.)

Between October 2005 and December 31, 2011, Spoonemore visited the Shannon County Family Clinic (the Clinic) on fourteen separate occasions. These encounters were generally for follow up on her diagnosed hypertension, thyroid, and epigastric/gastrointestinal conditions. Numerous additional notations were made during this period documenting associated medication refills and test results. Spoonemore also sought treatment for acute health issues during this time, such as for cough and tooth pain, and she also occasionally complained of mid-back pain. At no time during this period did Spoonemore complain to her healthcare providers that she experienced any pain or other issues involving her hips, knees, or ankles, or that she experienced any limitations because of any health issues. (Tr. 236-257.)

On January 30, 2007, Spoonemore visited the Clinic with complaints of having symptoms associated with a head cold. Although she made no complaints regarding ankle pain, general musculoskeletal examination showed ankle tenderness. No treatment was given for this tenderness, nor were any treatment recommendations made. (Tr. 253-55.) On August 2, 2007, musculoskeletal examination was normal with no soft tissue swelling noted. (Tr. 252-53.) On

December 19, 2007, musculoskeletal examination showed no abnormalities of the feet. (Tr. 248-50.)

On May 14, 2008, Spoonemore had no complaints during her routine Clinic visit, but low back tenderness was noted upon examination. No abnormalities were noted about the feet. (Tr. 245-46.) During her routine check up on March 27, 2009, Spoonemore had no new complaints. (Tr. 243.) Likewise, during her routine check up on April 5, 2010, Spoonemore was noted to have "no real complaints." (Tr. 241.) On May 17, 2011, she complained of cough, fatigue, and intermittent back pain associated with deep breaths. No other complaints of musculoskeletal or joint pain were noted. Spoonemore was diagnosed with and treated for esophageal reflux. (Tr. 238.)

After December 31, 2011, and through May 2013, Spoonemore had twelve additional encounters with the Clinic, with associated notes made for medication refills and test results. During this period, she had no complaints regarding ankle pain or limitations in standing or walking. Nor are any treatment recommendations noted for ankle pain. (Tr. 221-36.)

During her visit at the Clinic on February 21, 2012, Spoonemore denied any complaints. (Tr. 235.) She first complained of knee pain in January 2013, reporting that she had chronic knee and back pain that worsened after sitting or resting. She was diagnosed with arthralgia, but no treatment other than continued use of aspirin was rendered or recommended. (Tr. 227-28.) During her routine

check up on April 26, 2013, Spoonemore reported her "usual joint pains and stiffness," but her complaints were unspecified and no further treatment is recorded. (Tr. 222.)

In February and March 10, 2014, Spoonemore visited the Good Samaritan Clinic with complaints of abdominal and joint pain. It was noted that Spoonemore had "multiple sites" of joint pain and that she took Tylenol but without much improvement. No edema was noted. Spoonemore was prescribed Meloxicam for arthritis and she was continued on her treatment regimen for hypothyroidism and epigastric pain. (Tr. 370-73.)

On May 15, 2014, Spoonemore underwent a consultative examination for disability determinations regarding her complaints of pain in her hips, knees, and ankles. Spoonemore reported to Dr. David Pfefferkorn that she had had ankle pain for about ten years and hip pain for about two years and that the pain had significantly worsened within the past three years. Dr. Pfefferkorn noted that Spoonemore weighed 274 pounds, and Spoonemore reported that she had gained about 100 pounds within the previous year and a half. Physical examination showed genu valgum deformity of the legs, normal rotation of the left hip and limited external rotation of the right hip, significant deformities with evidence of synovitis of both knees but with full rotation, and synovitis in both ankles. An MRI of the hips showed focal spurring along the left femoral head. MRIs of the knees showed mild to moderate osteoarthritis about the right knee and early

osteoarthritis about the left knee. Dr. Pfefferkorn diagnosed Spoonemore with obesity and degenerative joint disease involving multiple joints. He concluded that Spoonemore was disabled and that her disability would last one year. (Tr. 358-63.)

**The ALJ's Decision**

The ALJ determined that Spoonemore last met the insured status requirements of the Social Security Act on December 31, 2011, and had not engaged in substantial gainful activity since July 1, 2006, the alleged onset date of disability. The ALJ found that through the date last insured, Spoonemore had the medically determinable impairments of ankle dysfunction, diverticulosis, and obesity. He determined, however, that none of these impairments, either singly or in combination, were severe given that they did not significantly limit her ability to perform basic work-related activities for twelve consecutive months. The ALJ thus found Spoonemore not to be under a disability from the alleged onset date through the date last insured. (Tr. 15, 19.)

**Discussion**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability claimant bears the burden of proving that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health &*

*Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).

The Commissioner engages in a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Step 1 considers whether the claimant is engaged in substantial gainful activity. If so, disability benefits are denied. At Step 2, the Commissioner decides whether the claimant has a "severe" medically determinable impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. If the impairment(s) is severe, the Commissioner then determines at Step 3 whether such impairment(s) is equivalent to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) meets or equals one of the listed impairments, she is conclusively disabled. At Step 4, the Commissioner establishes whether the claimant's impairment(s) prevents her from performing her past relevant work. If the claimant can perform such work, she is not disabled. Finally, if the claimant is unable to perform her past work, the Commissioner continues to Step 5 and evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. The claimant is entitled to disability benefits only if she is not able to perform other work.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

The ALJ here terminated the sequential analysis at Step 2 upon finding that Spoonemore's medically determinable impairments were not severe. Spoonemore claims that the ALJ erred in his analysis, however, arguing that the method by which he determined her credibility and the weight he accorded to the opinion evidence of record improperly imposed a higher burden than that required of a claimant at Step 2. For the following reasons, Spoonemore's arguments fail.

A severe impairment is one that significantly limits a claimant's physical or

mental ability to perform basic work activities and has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4), (c) and 404.1509. "The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal citations and quotation marks omitted) (brackets in *Martise*). The claimant has the burden of showing a severe impairment, but the burden at this stage of the analysis "is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). While establishing "severity" may not be an onerous requirement for a claimant to meet, "it is also not a toothless standard[.]" *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

*Credibility Determination*

Spoonemore initially contends that an ALJ must consider medical evidence alone when determining at Step 2 whether a claimant's impairments are severe. The Eighth Circuit has concluded, however, that considering a claimant's credibility is important at Step 2 of the sequential analysis. *Caviness*, 250 F.3d at 605-06; *see also Kirby*, 500 F.3d at 708. The ALJ here properly considered Spoonemore's credibility in his Step 2 analysis, and his credibility determination is supported by substantial evidence on the record as a whole.

When evaluating the credibility of a claimant's subjective complaints, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony. *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). An ALJ may not discount a claimant's allegations of pain solely because the objective medical evidence does not fully support them, but the ALJ may disbelieve subjective complaints if there are inconsistencies in the record as a whole. *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, and courts should defer to an ALJ's explicit findings. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

The ALJ here noted several inconsistencies between Spoonemore's allegations of pain and the other evidence of record. First, the ALJ noted Spoonemore's daily activities to be inconsistent with her report of limiting ankle pain. The ALJ specifically noted Spoonemore's testimony that, during the relevant period, she performed various household chores, had no difficulties with lifting or

walking on smooth surfaces, could stand or walk for up to an hour at a time, and went fishing several times during the summer. The ALJ did not err in finding these activities to diminish Spoonemore's claims regarding the severity of her pain. *See Goff*, 421 F.3d at 792 (allegations of pain diminished with evidence of no pain medication; no assistive devices; ability to perform household chores such as laundry, cooking, vacuuming; and walking).

The ALJ also noted that Spoonemore had very little medical treatment during the relevant period, and that the treatment records generally showed normal physical examinations with no musculoskeletal abnormalities and only occasional notes of tenderness. The ALJ noted that few treatment notes during the relevant period included any complaints, evaluation, or treatment of knee or ankle pain. Although Spoonemore testified that she did not seek treatment for her pain because of a lack of insurance, the record shows that she nevertheless sought and received treatment on numerous occasions during this period for other conditions such as hypothyroidism and gastrointestinal issues as well as for acute conditions such as tooth pain and head colds. While financial difficulty can constitute a good reason for lack of medical treatment, an ALJ can properly find inconsistencies when the evidence shows a claimant sought and received other medical treatment despite a supposed inability to pay. *Brown v. Barnhart*, 390 F.3d. 535, 540 (8th Cir. 2004).

The record also shows that Spoonemore had a number of diagnostic tests performed during this period as well as multiple prescriptions for medication, but

none of these tests or prescriptions was for Spoonemore's claimed ankle or knee pain. An ALJ may dismiss a claimant's subjective complaints of pain based on her failure to pursue medical treatment. *Edwards v. Barnhart*, 314 F.3d 964, 967-68 (8th Cir. 2003); *see also Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding claimant not disabled because of reports of regular activities combined with four years of doctor's visits with no recorded complaints). In addition, where multiple examinations show no relevant abnormalities, an ALJ does not err in finding the medical evidence not to support a claimant's allegations of pain. *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010).

Finally, the ALJ noted that Spoonemore's other claimed conditions were controlled by medication, and Spoonemore does not argue otherwise. Nor does Spoonemore claim that her other diagnosed conditions caused limitations that more than minimally affected her ability to engage in basic work activities. *See Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009).

Accordingly, in a manner consistent with and as required by *Polaski*, the ALJ considered Spoonemore's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from her credibility. Because the ALJ's determination not to credit Spoonemore's subjective complaints is supported by good reasons and substantial evidence, I defer to this determination. *Renstrom*, 680 F.3d at 1065; *Goff*, 421 F.3d at 793; *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).

Spoonemore argues, however, that the ALJ's credibility analysis improperly imposed a higher burden when he found her allegations of limitations and pain "that precludes all types of work" to be inconsistent with the record. (*See* Tr. 18.) Spoonemore contends that at Step 2 of the analysis, an ALJ does not determine whether a claimant is precluded from performing "all types of work," but instead whether she merely experiences limitations in performing basic work activities. I have reviewed the ALJ's thorough credibility analysis and do not find this isolated statement to detract from the ALJ's overall finding that Spoonemore's subjective complaints of pain were not credible. I am not aware of any varying degrees of credibility associated with the different steps of the analysis. Regardless, a review of the ALJ's decision in its entirety shows that any error in this perceived misstatement had no bearing on the outcome. I will not reverse the ALJ's credibility finding based on an arguable deficiency in opinion-writing technique. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

*Medical and Opinion Evidence*

Spoonemore argues that the medical evidence of record shows her complaints of pain and diagnostic imaging of arthritis in the ankle to establish a severe impairment during the relevant period, and that Dr. Pfefferkorn's May 2014 opinion shows that the disability continued after the date last insured. As summarized above and as noted by the ALJ, however, the medical evidence shows that while an August 2005 MRI suggested arthritis in the right ankle, several

medical examinations during the relevant period were essentially normal and showed no musculoskeletal abnormalities. Further, Spoonemore made no complaints of ankle pain to any medical provider during the relevant period, and to the extent she claims now that she experienced limiting pain, the ALJ properly determined these allegations to not be credible. There simply is no medical evidence showing that from the alleged onset date of disability to the date last insured Spoonemore's impairments significantly limited her ability to do basic work activities. Nor can her discredited complaints establish such limitations. *See Kirby*, 500 F.3d at 708.

With respect to Dr. Pfefferkorn's medical opinion, the ALJ properly found it to be immaterial to Spoonemore's ability to function on the date last insured, that is, December 31, 2011, given that Dr. Pfefferkorn examined Spoonemore in May 2014 and only addressed her then-current ability to function. Because Dr. Pfefferkorn's examination and opinion does not demonstrate Spoonemore's limitations during the time period relevant to her claim, the ALJ did not err by according the opinion little weight in his determination. *See Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014). Moreover, a medical source opinion stating that an applicant is "disabled" or "unable to work" involves an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). An ALJ may properly disregard conclusory statements regarding this reserved issue. *Ellis v. Barnhart*, 392 F.3d 998, 994 (8th Cir. 2005).

*Failure to Obtain Opinion from Medical Advisor*

Spoonemore also argues that the ALJ failed to properly develop the record to establish a date regarding the onset of limitations prior to her date last insured. Spoonemore specifically contends that the ALJ should have obtained the opinion of a medical advisor to infer a reasonable onset date for the limitations that Dr. Pfefferkorn found.

Social Security Ruling 83-20 provides guidelines for determining the onset of a claimant's disability in circumstances where the alleged onset and the date last worked are far in the past. SSR 83-20, 1983 WL 31249 (1983); *Grebenick v. Chater*, 121 F.3d 1193, 1200 (8th Cir. 1997). SSR 83-20 directs an ALJ to call on the services of a medical advisor in cases where there is no contemporaneous medical documentation of symptoms and the existing medical evidence is ambiguous as to whether a disability may have begun prior to the expiration of a claimant's insured status. *Grebenick*, 121 F.3d at 1200-01. An ALJ is not required to call on a medical advisor where contemporaneous medical evidence shows unambiguously that the symptoms were not at a disabling level of severity. *Id.* at 1201.

Here, as discussed above, there are contemporaneous medical records from the relevant period showing that Spoonemore's medically determinable impairments were not severe. There is no ambiguity in this case. Accordingly, no question is raised as to whether any of Spoonemore's impairments could be

considered disabling on or before the expiration of her insured status. The ALJ did not err in failing to seek the opinion of a medical advisor. *Grebenick*, 121 F.3d at 1201.

**Conclusion**

The issue of Spoonemore's disability must be evaluated based on her condition from the alleged onset date of July 1, 2006, through December 31, 2011, her date last insured. In considering the evidence relevant to that period, my role is to determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Because a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Spoonemore did not suffer a severe impairment during that period, the ALJ's decision must be affirmed. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001); *Lynch v. Astrue*, No. 4:10-CV-01035 NAB, 2011 WL 3943851, at *13 (E.D. Mo. Sept. 7, 2011).

Accordingly, for the reasons set out above, the ALJ's determination that Spoonemore was not disabled on or prior to December 31, 2011, is supported by substantial evidence on the record as a whole, and Spoonemore's claims of error are denied.

Therefore,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of October, 2017.